May it please the Court, I'm John McGregor, Counsel for the Appellant Estate. Judge Fletcher, thank you for the welcome back. I'm sorry to be troubling you again, all of you again. But I hope it's a welcome break from the diet of immigration cases you have this morning. Sometimes I can escape cases coming back to me because it's a comeback case and I'll say no, but sometimes they just come randomly and here you are. Okay. I guess what he's saying is he didn't volunteer for this. But here we are. Okay. Welcome back. I hope that Judges Canby and Tolman were relieved to discover what Judge Fletcher already knew and this is merely emasculating as an estate tax case. It is truly a California landlord-tenant case. The briefs are exhaustive, I hope not exhausting, so what I'd like to do is just focus on some things that I didn't mention in brief, some things that have occurred to me later. Certainly intent of the landlord and the tenant is very important here. One of the sources from which we can derive intent is the tax returns of the parties. It's clear that the tax returns of the corporation carried the improvement. Who controlled the corporation? For many years it was the decedent landlord. I suggest that that is a major factor that we should be looking at. Mr. McGregor, could you help me with the standard of review here? Yes. I was a bit confused when I looked at, with all due respect to my colleague, the prior panel's order and what it asked the tax court to do. And as I now understand it, the tax court was asked to determine whether the trade fixtures were removable or not, and it did so, and now you're back here. By what standard do we review that determination? Is that a question of fact to which we are obviously to defer and less clearly erroneous, or is there something more? There is. The court, the recent cases have budged that issue. This Court in 1936 in the Chatham Gold Dredging case said it is a mixed question of law and fact. That case, however, was applying Alaska law. The more recent California cases have treated the matter as being largely a question of fact, meaning a mixed question of law and fact. So you have the Vortrig brothers v. Chaparro case in 1931. But you just split from fact to mixed question of law and fact, and there was a bit of a slight of hand here. Yes. So the recent California cases say what? Is it essentially a question of fact, then, to which the law of fixed question of law? Yes. One of the cases does say it is essentially a question of fact, and that is Beebe v. Richards. Okay. More recently, you have the Vortrig brothers v. Chaparro case saying largely a question of fact. That's a decision of the California Supreme Court. And that language is echoed in Tessel v. Healey. It is my thought that when you look at the body of cases involving the removal of a freestanding tenant-financed improvement, you have, without exception, six California Supreme Court cases and three California Court of Appeal cases and the court case of Chatham Gold Dredging, which I mentioned a moment ago, of this court, all allowing removal, without exception. And it seems to me that when you have such a consistent course by the courts over the years, over many years, that this is more than a question of fact. This is a question of law. And I don't think we're in dispute about what happened. I think we're in dispute of what it means, what happened. I mean, the structures are there. They can be removed or can't be removed in the following fashion. I don't think you guys are fighting about that. You're just fighting about what does that mean. Yeah. Isn't that right? I think that's what we're arguing about. We're arguing about whether or not the – in the words of the statute, the improvement can be removed without injury. And we have clear testimony there that what we're doing – But you have a stipulation. You have a stipulation.  And we have a stipulation. Let me follow up on Judge Fletcher's question. Does it matter that the leasehold terminated by its terms and your clients failed to comply with the renewal provisions? No, it doesn't matter. Before they took any action at all on the improvements? No, it doesn't matter at all. Don't the California cases talk about that, that some of the older cases in particular, that once the tenant gives up the leasehold, that the right to remove the trade fixture is also given up at that time? Yes. Well, it's unclear what we decided on a lot of matters. That we did decide. Yes. That is to say, we decided that he was a holdover tenant. Yes. And the statute talks about – Whatever the statute meant, the statute still applied for trade fixtures. Right. So the question was whether these are trade fixtures. Okay. So there's no question then, I guess, as I understand what you're saying, there's no question now that the tenancy continues and obviously they don't want to remove the trade fixtures because they're still operating the business. Correct. Okay. My question is under the statute, not whether they can be removed without injury to the business, but rather when you get to the tail end of the statute, have they become an integral part of the premises? There are only two California cases, only two California cases addressing that issue. And they are both Supreme Court cases. One is Gordon v. Cone. The other is Alden v. Mayfield. Both of those cases involved removal of an improvement to a building. So Alden v. Mayfield in 1912 was the removal of the entire front of the building. And what the court said there was this is a removal of part of the building. This is not a removal of a fixture. So clearly what had happened there was there was an application of the doctrine of accession. In other words, the improvement by the tenant was merged into the building. And the same was true of the linoleum flooring and the awning in Gordon v. Cone. There you have a removal of an awning where the court says it was difficult, if not impossible, to put up another one had it been removed. And the removal of the linoleum flooring would have taken with it a small portion of the underlying floor in the building. So here again you've got an example of accession. Perhaps this is a little tangential to that. Why wouldn't removal of the paving be pure waste? The old cases prior to the emergence of the trade fixtures rule treated removal of improvement by the tenant as waste. So the trade fixtures rule is... But it's one thing to remove a building that presumably you can use in materials and things elsewhere. But if you remove paving, you've just got a pile of rubble that you have to get rid of, I think. The statute is silent on the issue of whether or not any tenant may destroy an improvement when it removes it. The requirement is only that it be removed without injury to the premises. And what we know is that the premises started out as dirt. So if they are returned to dirt, there is no injury. So we really don't care what the tenant does with the former awning or the linoleum or whatever it might be. No. That is not attached under the statute. Thank you very much. And you've saved a minute and a half. Thank you. I can't please the Court. I'm Annette Witecka, and I represent the Commissioner. Now, I'm embarrassed to say, I can't remember. Were you before us before? I know this is the same. Oh, good. So welcome back to you, too. Thank you very much. I actually had bronchitis the first time I argued this case, so I already feel like I'm in better shape than last time. And I also did not volunteer for handling the appeal after the remand. But we're happy to be here. Thank you. I am, too. It's always nice to come to San Francisco. I'll address the issue of the standard of review. The California cases are clear that the question whether something that's affixed to the land can be removed without injury, whether it's become an integral part of the premises, is largely a question of fact. I think you can say it's a mixed question of law and fact if you think of the issue of, has it become an integral part of the property? That's a question of fact. The ultimate conclusion that it's a trade fixture that can be removed under Section 1019 would be a question of law. And I think that that's a fair reading of the cases that the appellant cited with respect to the standard of review. That's Goldie v. Bychuk Properties. And then also this Court's opinion in the Chatham Gold dredging case said that the issue was a mixed question of law and fact. But in that case, there was a question whether there was a tenancy at all. So it wasn't just whether the fixtures could be removed from the property without injury. It was whether there was a landlord-tenant relationship at all. But the cases that we've cited in our brief and which counsel has mentioned today deal with this as a question of law. I mean, I'm sorry, as a question of fact. And so we get it is a question of fact, but California seems to have been pretty consistent in recent decades, saying if you can remove it without hurting the underlying realty, you can take it away. But there is that section of Section 1019. Can you remove it without injury? But there's also what you refer to as the tail end of Section 1019. Has it become an integral part of the premises? And that is factual because that's looking at the manner in which it's affixed to the property. And so here, you know, we have asphalt, which, I mean, it's hard to imagine something affixed, something that could be more affixed to the property than asphalt. Now, how much does the commissioner care about getting the asphalt? That's the least of the ‑‑ that's going to get you about 50 cents. Well, actually, I think the asphalt was valued at about $60,000. Okay. That's a slightly facetious question. Well, you're right. The commissioner just wants money, right? He doesn't want asphalt. I mean, there's the asphalt, there's the well, which by its nature is embedded in the property, other buildings. We look to California law, of course, in terms of to determine what the law means by integral. And I do see the little bit of case law we have, I think is accurately described as, is really part of a building. So you have a building that is the leasehold. Then there's some additional building that goes on to the leasehold so that it now is a somewhat different building. And even if you can take the stuff away, the fixture, without injury, it's somehow been so incorporated into the building that it becomes an integral part of that building. Those cases don't apply very well here, except maybe by analogy to when what the leasehold is is bare dirt. And we're not attaching sort of boards to boards. We're attaching structure to dirt. Given the case law, how are we to understand the term integral under California law? Well, I'm not sure how to answer that. I mean, it is true that this case mostly involves freestanding buildings and things that are attached to the dirt. But, I mean, the statute applies the same way to things that have been attached to buildings and things that have been attached to the ground. And that is, how have they been attached? How have they been affixed? You know, are they so stuck to the leased premises that I guess I'm not really answering your question. I'm not really sure how to answer it. I mean, what the law is looking at is how stuck to the property have the improvements been. And I think in this regard, what can help you is looking at the intent of the parties. Cases that we've cited do recognize that the intent of the parties is important. And even the appellant in its opening brief at page 23 recognizes that intent is important. And here we have testimony from the decedent's son indicating that they never had any, they never anticipated that the nut farm or the decedent or the children would leave the premises. So, you know, it was very clear from his testimony that these things were going to stay put. And so. But it was also, there was going to continue to be a lessee, too. Yes. Yes. But, I mean, it would be an easier case if they had included, you know, a provision in the lease saying that improvements would be. But the argument is made that why would he pass on stock to his children and things if none of this stuff belongs to the corporation anymore? Well, there wasn't any testimony about that. And, I mean, I think that the son's testimony, I think that the problem, you know, one of the problems is that this was a family corporation renting from one of the shareholders and everything was just sort of all mixed together. Nobody really considered things to be separate. Nobody knew, half of them didn't know there was a lease. Right. Right. And so I'm not sure that, you know, the decedent really would have thought about, well, you know, why should I be giving my stock away if I'm keeping this property? Am I now, maybe I'm looking at this too simplistically. But if we said that the leasehold carries over, and if these are removable trade fixtures, in fact, then why should the death of the decedent produce any sort of a taxable event if the business is continuing under an extension of the leasehold? Well, it's that when the estate tax return is filed, the estate is taxed on the value of the decedent's gross estate. Oh, no, I understand all that in the 706. I guess my question, though, is that if we previously decided that there was a holdover here, and if these are removable trade fixtures, but the business continues and the tenant hasn't removed anything yet but has the right to do so at any time. Right. But the decedent's estate has to be valued as of the date of the decedent's death. And so what gets included is any interest in any property that he has at the time. And so that's why there's a question. Did he have an ownership interest in these trade fixtures? The issue, I think, really is, if you consider it apart from sort of the event of death or whatever, the real question is could the tenant, during the middle of the leasehold, decide, you know what, I'm going to change the use here, and I'm going to plant some trees, and I'm going to tear up all these structures and burn them or do whatever I'm going to do, but I'm going to get them out of here. Does the tenant have the right to do that? If they are removable trade fixtures, he does. If they're not, he doesn't. Right. Right. And what that comes down to is have they become an integral part of the property, and that's what the tax court found. Okay. So I think that's it. Thank you very much. And I think we've saved a little time for rebuttal. Okay. I have just a couple of quick comments, one relating to the attempt by counsel to distinguish the Chatham Gold Dredging case. She said we're not sure there was a lease there. In fact, in the California Supreme Court case of Gosliner v. Briones, the 1921 case, there was not a lease, there was a license, and it was clear that the trade fixtures were applied. On integral part, this case is a lot like Borchers Brothers v. Chaparro, where an agricultural tenant comes on the property and puts in agricultural processing equipment and structures. So this is very much like that. There's a helpful comment in one of the law review articles, in the Friedman Law Review article in USC Law Review. He talks about integral part being kind of the flip side of injury. In other words, if something's an integral part of the premises, it will produce injury if it's removed. And that was the case in the two building cases that I mentioned. Those are my only additional comments. Thank you very much for a helpful argument on both sides. I'm not sure whether we will be able to manage this case such that you get another trip, but we'll try. Thank you. The case of Frazier v. Commissioner of Internal Revenue Service has now been submitted for decision.
judges: Canby, W. Fletcher, Tallman